## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

VINCENT DOYLE, BRANDON SAENZ,
DAVID MCKEE, RANDI ROGERS, and
TASIA WILLIAMS,

        Plaintiffs,

v.

COMBINED SYSTEMS, INC. and
PENN ARMS,

        Defendants.

Civil Action No. 3:22-CV-01536-K

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Defendants Combined Systems, Inc. and Penn Arms' First Amended Motion to Dismiss for Plaintiffs' Failure to State a Claim (the "Motion to Dismiss"), Doc. No. 19, Defendants Combined Systems, Inc. and Penn Arms' Brief in Support of First Amended Motion to Dismiss for Plaintiffs' Failure to State a Claim, Doc. No. 20, Plaintiffs Vincent Doyle, Brandon Saenz, David McKee, Randi Rogers, and Tasia Williams' Response to Defendants' First Amended Motion to Dismiss for Plaintiffs' Failure to State a Claim, Doc. No. 24, and Defendants Combined Systems, Inc. and Penn Arms' Reply Brief in Support of First Amended Motion to Dismiss for Plaintiffs' Failure to State a Claim, Doc. No. 26. Having carefully considered the Motion, the Parties' briefing, and Plaintiffs' Second Amended Complaint ("Complaint," or "Compl."), Doc. No. 14, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' claims without prejudice.  Doc. No. 19.  Plaintiffs allege that Dallas police officers

shot them with rubber bullets during a protest because Defendants, the bullets' manu-facturers, failed to warn Dallas and its police department that the bullets were unrea-sonably dangerous when used for crowd control.  Congress barred Plaintiff's failure to warn claims when it enacted statutory defenses for firearm manufacturers and sellers in the Protection of Lawful Commerce in Arms Act.  Plaintiffs' failure to plead that they were involved in the transactions by which Defendants purportedly deceived the city and the police department forecloses Plaintiffs remaining implied warranty of fit-ness and deceptive trade practices claims.

## I.   FACTUAL ALLEGATIONS

Plaintiffs and Defendants present competing, but consistent, accounts of the events giving rise to Plaintiffs claims.  For purposes of resolving Defendants' Motion to Dismiss, the Court assumes that all facts alleged in Plaintiffs' Complaint are true.

Plaintiffs are five individuals who suffered personal injuries when officers of the Dallas Police Department ("DPD") shot Plaintiffs with rubber bullets while Plaintiffs participated in Dallas-based protests prompted by the death of George Floyd, a black man killed by Minneapolis police officers.  Compl. ¶¶ 16–37.

Plaintiffs trace their injuries to the marketing of the rubber bullets and the launchers that fire them, both manufactured and promoted by Defendants.  *Id.* ¶¶ 6–7, 43, 63.  While Defendants advertise their products as "less lethal" tools for crowd control, Plaintiffs cite studies and reports purportedly demonstrating that rubber bul-lets are unsafe for crowd control because the projectiles frequently cause serious injury

or death.  *Id.* ¶¶ 20, 38–63.  Relying on Defendants' expertise, the DPD purchased Defendants' products for use in crowd control scenarios.  *Id.* ¶¶ 53–54.

The DPD then used Defendants' launchers and rubber bullets to control crowds during the protests stemming from Floyd's death.  *Id.* ¶¶ 21–37.  On May 30, 2020, DPD officers shot Plaintiffs Vincent Doyle and David McKee with the rubber bullets while Mr. Doyle and Mr. McKee were allegedly complying with orders requiring protestors to disperse.  *Id.* ¶¶ 21–24, 29–32.  Both men suffered serious injuries— Mr. Doyle to his face and Mr. McKee to his testicles.  *Id.* ¶¶ 24, 32.  On the same day, DPD officers shot Plaintiff Randi Rogers with a rubber bullet while she photographed the protests and shot Plaintiff Brandon Saenz with a rubber bullet while he searched for a friend.  *Id.* ¶¶ 25–28.  Ms. Rogers suffered a hole in her scalp, and Mr. Saenz lost his left eye.  *Id.* ¶¶ 25, 28.  On June 1, 2020, DPD officers shot Plaintiff Tasia Williams with one of Defendants' rubber bullets and arrested her while she protested on the Margaret Hunt Hill Bridge.  *Id.* ¶¶ 33–37.  Ms. Williams suffered injuries to one of her legs.  *Id.* ¶ 37.  All plaintiffs except Mr. Saenz have experienced emotional distress because of their injuries.  *Id.* ¶¶ 25, 28, 32, 37.

Defendants seek to supplement the foregoing account of Plaintiffs' injuries with facts purportedly showing that the DPD officers who shot Plaintiffs should bear responsibility for the injuries.  Doc. No. 20 at 12.  Defendants draw their factual allegations from two sets of separate proceedings related to this case.

3

First, Defendants note that Plaintiffs have filed a separate civil action against the DPD officers (the "Separate Civil Proceeding") in which Plaintiffs allege that the officers violated a federal statute, 42 U.S.C. § 1983, by shooting them with rubber bullets during the May 30 and June 1 protests.  Doc. No. 1, *Williams v. City of Dallas*, No. 3:20-cv-01526-L (N.D. Tex.) (Lindsay, J.).  In their Second Amended Complaint in the Separate Civil Proceeding, all five Plaintiffs allege that the shootings constituted "objectively unnecessary, excessive, and unreasonable" uses of force against Plaintiffs as part of a "willful, malicious, reckless, and outrageous course of conduct" by the DPD officers that was "intended to cause and, in fact, did cause [Plaintiffs] to suffer extreme and severe mental and emotional distress, agony, and anxiety."  *Id.* Doc. No. 109 ¶ 121.  The unamended Complaint, filed by Mr. Doyle and Ms. Williams, and the First Amended Complaint, joined by Ms. Rogers and Mr. Saenz, contain similar allegations. *Id.* Doc. No. 1 ¶¶ 94–99; *id.* Doc. No. 39 ¶¶ 94–99.

Second, Defendants note that the Dallas County District Attorney has charged two DPD officers with crimes—including aggravated assault by a public servant, deadly conduct, and official oppression—arising out of their alleged discharge of firearms during the May 30, 2020 protest.  The District Attorney contends that the first officer unlawfully shot Mr. McKee and Mr. Saenz with a launcher, *Texas v. Mabry*, Nos. F2299805, F2299806, F2299802, F2299803, F2200220, F2200227 (Dist. Ct., Dallas Cnty.), and that the second officer unlawfully shot Mr. McKee and Mr. Doyle with a launcher.  *Texas v. Williams*, Nos. F2299810, F2299812, F2299808, F2200223 (Dist.

Ct., Dallas Cnty.).  The cases against both officers (collectively, the "Separate Criminal Proceedings") remain pending.

Plaintiffs do not dispute the accuracy of the allegations in the Separate Civil Proceeding or the Separate Criminal Proceedings but object to consideration of the allegations as materials outside Plaintiffs' pleading.  Doc. No. 24 at 9–10.

## II.  PROCEDURAL HISTORY

On May 31, 2022, Mr. Doyle, Mr. McKee, and Mr. Saenz filed an Original Petition in the 193rd Judicial District Court of Dallas County seeking damages caused by Defendants' purportedly misleading marketing of the launchers and rubber bullets that the DPD purchased and used against the three men.  Doc. No. 1, Ex. C.  Ms. Rogers and Ms. Williams, the remaining Plaintiffs here, joined in an Amended Original Petition later the same day.  *Id.*, Ex. D.  On July 15, 2022, Defendants removed the case to this Court, where Plaintiffs filed a Second Amended Complaint on August 30, 2022.  Doc. Nos. 1, 14.

In their Second Amended Complaint, Plaintiffs advance four claims for monetary relief.

First, Plaintiffs allege that Defendants are strictly liable for Plaintiffs' injuries because Defendants failed to adequately warn users that Defendants' rubber bullets and launcher are unreasonably dangerous when used for crowd control.  Compl. ¶¶ 43–48.  In the terminology of Texas tort law, this is a "marketing defect" theory.

Second, Plaintiffs allege that Defendants negligently breached a duty to warn the general public that their rubber bullets and launcher are unreasonably dangerous when used for crowd control. *Id.* ¶¶ 49–52. Although Plaintiffs label this claim as one for "negligent and false marketing," the Court construes it as a claim for negligent failure to warn. *Id.*

Third, Plaintiffs allege that Defendants supplied the City of Dallas and the DPD with rubber bullets and launchers that were unfit for use in crowd control settings despite knowing that the City, the DPD, and Plaintiffs were relying on Defendants' expertise in selecting appropriate tools to serve the City's and the DPD's crowd control needs. *Id.* ¶¶ 53–55. This is a claim for breach of an implied warranty that the products are fit for the particular purpose for which Defendants sold them. *Id.*

Finally, Plaintiffs allege that Defendants violated the Texas Deceptive Trade Practices Act (the "DTPA") by marketing their launchers and rubber bullets in misleading fashion and by unconscionably exploiting the City's and the DPD's reliance on Defendants' expertise in purchasing the launchers and rubber bullets. *Id.* ¶¶ 56–63. Plaintiffs also contend that Defendant's alleged breach of the implied warranty of fitness—the subject of Plaintiffs' third claim—independently violates the DTPA. *Id.* ¶ 59.

On September 20, 2022, Defendants moved to dismiss Plaintiffs' claims. Doc. No. 19. On April 28, 2023, Defendants filed a motion for summary judgment dismissing Plaintiffs' claims, which is not at issue here. Doc. No. 33.

## III.   LEGAL STANDARD

The Court will dismiss a claim pursuant to Federal Rule of Civil Proce-dure 12(b)(6) if Plaintiffs fail to plead facts sufficient to make the claim plausible. *Ash-croft v. Iqbal*, 556 U.S. 662, 678 (2009).  In assessing the plausibility of a claim, the Court assumes that Plaintiffs' factual allegations are true but does not assume that Plaintiffs' legal conclusions are true.  *Id.* at 678–79.  In addition to Plaintiffs' factual allegations, the Court considers documents incorporated in Plaintiffs' complaint by reference and facts of which the Court takes judicial notice.  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

## IV.   JURISDICTION

The Court begins by assuring itself that it has the power to decide this case.  The basic elements establishing the Court's subject matter jurisdiction are not in doubt.  Defendants have properly invoked the Court's jurisdiction over cases between citizens of different states involving an amount in controversy exceeding $75,000.  28 U.S.C. § 1332(a)(1).  Plaintiffs, citizens of Texas and Georgia, seek more than $1,000,000 in damages from Defendants, citizens of New York and Pennsylvania.  Doc. No. 1 ¶¶ 9–11.

This case presents a jurisdictional wrinkle because it implicates the protections Congress conferred on firearms manufacturers and sellers like Defendants in the Pro-tection of Lawful Commerce in Arms Act ("PLCAA"), Pub. L. No. 109-92, 119 Stat. 2095 (2005) (codified at 15 U.S.C. §§ 7901–7903).  Under the PLCAA, a "qualified civil liability action may not be brought in any Federal or State court," and qualified

civil liability actions pending at the time the PLCAA became effective "shall be immediately dismissed."  15 U.S.C. § 7902.

By way of background, qualified civil liability actions involve "qualified products," meaning firearms, ammunition, or components of firearms or ammunition shipped or transported in interstate or foreign commerce.  *Id.* § 7903(4).  A qualified civil liability action includes a "civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product" for any relief "resulting from the criminal or unlawful misuse of a qualified product by the person or a third party."  *Id.* § 7903(5)(A).  Qualified civil liability actions do not include actions for negligent entrustment, negligence per se, breach of contract or warranty in connection with the purchase of a qualified product, knowing violation of federal or state statutes applicable to the marketing or sale of qualified products, and certain actions for manufacturing or design defects, among others.  *Id.*

The limited precedent is divided on the issue of whether the PLCAA creates a jurisdictional defense to qualified civil liability actions.  The District of Massachusetts has held that the PLCAA deprives federal and state courts of jurisdiction to hear such actions, while the Second Circuit earlier held that the PLCAA creates a non-jurisdictional defense.  *Compare Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 633 F. Supp. 3d 425, 441–42 (D. Mass. 2022), *with City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 127 (2d Cir. 2011).

The Court agrees with the Second Circuit that the PLCAA's prohibition on qualified civil liability actions is not jurisdictional because Congress did not clearly intend the PLCAA to limit the jurisdiction of the federal and state courts. *Mickalis*, 645 F.3d at 127.  In *Arbaugh v. Y & H Corp.*, the Supreme Court set forth a "readily administrable bright line" test to determine whether a statutory limitation on a claim is jurisdictional. 546 U.S. 500, 515 (2006).  A limitation is jurisdictional if Congress "clearly states" that it "shall count as jurisdictional." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (quoting *Arbaugh*, 546 U.S. at 515).  Conversely, a statutory limitation should be given a "plausible" non-jurisdictional interpretation if possible. *Santos-Zacaria v. Garland*, 143 S. Ct. 1103, 1112–14 (2023).

The text of the PLCAA plausibly bears a non-jurisdictional interpretation as a defense to qualified civil liability actions.  The PLCAA's prohibition on bringing qualified civil liability actions "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Arbaugh*, 546 U.S. at 502 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)) (finding that Title VII's prohibition of employment practice suits against employers with less than fifteen employees is non-jurisdictional).  Although the prohibition does not fit neatly in either of the most common categories of non-jurisdictional limitations on suit—claim-processing rules that require a plaintiff to take procedural steps at designated times and mandatory elements of a plaintiff's substantive claims—it also differs from most jurisdictional limitations on suit because it does not reference jurisdiction, appear in the jurisdictional provision

of a statute, or reference the jurisdictional provision of a statute. *Cf., e.g., Rivero v. Fid. Invs., Inc.*, 1 F.4th 340, 344–45 (5th Cir. 2021) (noting that non-jurisdictional limitations are typically claim-processing rules or elements of a substantive claim and finding that a limitation was jurisdictional because it was juxtaposed with a reference to jurisdiction), *cert. denied*, 142 S. Ct. 1670 (2022); *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (finding that a limitation appearing in provision granting jurisdiction was jurisdictional); *Weinberger v. Salfi*, 422 U.S. 749, 756 (1975) (finding that a limitation referencing the statute granting federal question jurisdiction was jurisdictional).

Except with respect to qualified civil liability actions pending at the time of its enactment, the PLCAA addresses the power of litigants to bring qualified civil liability actions but not the power of courts to hear them. The "court" must "immediately dismiss[]" any qualified civil liability action pending at the time of the PLCAA's enactment, but a subsequent qualified civil liability action "may not be brought" in federal or state court. 15 U.S.C. § 7902(a). Regardless of whether the directive to the courts to dismiss pending actions is jurisdictional, the prohibition on bringing new actions is, by comparison, more plausibly understood as a defense to improperly filed claims. *See Pub. Serv. Co. v. NLRB*, 692 F.3d 1068, 1076 & n.2 (10th Cir. 2012) (Gorsuch, J.) (contrasting a jurisdictional requirement providing that matters not be "considered by the court" with non-jurisdictional requirements that no action "shall be brought" or "shall be instituted"); *Gulf Restoration Network v. Salazar*, 683 F.3d 158, 174 n.7 (5th

10

Cir. 2012) (finding a provision stating that "judicial review . . . shall be available only" to certain persons "focuses on individual litigants" and is not jurisdictional).

Two practical considerations confirm that the PLCAA does not clearly set forth a jurisdictional defense under *Arbaugh*'s bright line test for identifying jurisdictional limitations on suit.

First, because the PLCAA prohibits qualified civil liability actions in state courts as well as federal courts, treating it as jurisdictional would strip the state courts of jurisdiction over a range of state law claims.  15 U.S.C. § 7903(a).  The Court will not readily infer that "extraordinary" result.  *See Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1351 (2020) (rejecting interpretation of the Comprehensive Environmental Response, Compensation and Liability Act that would eliminate state courts' jurisdiction over state law claims).

Second, application of the PLCAA turns on facts likely to be disputed up to and through trial, creating a significant risk that a jurisdictional interpretation of the PLCAA would result in wasteful litigation ending in jurisdictional dismissal.  *See Arbaugh*, 546 U.S. at 501–02 (instructing courts to be "mindful of the consequences" of jurisdictional treatment).  In every case implicating the PLCAA, the Court must assess whether the relief requested by the plaintiff is causally related to the conduct of the plaintiff or a third party, and whether that conduct is criminal or violates a civil statute, regulation, or ordinance.  15 U.S.C. §§ 7903(5)(A), (9).  In cases involving a defendant's alleged violation of a federal or state statute applicable to the sale or marketing

of a qualified product, the Court must determine whether the violation occurred, whether the violation was knowing, and whether the violation proximately caused the harm for which plaintiff seeks relief. *Id.* § 7903(5)(A)(iii). If the facts developed at trial support application of the PLCAA, a jurisdictional reading of the statute would require the Court to dismiss the case without a judgment. *FDIC v. Sumner Fin. Corp.*, 602 F.2d 670, 672 (5th Cir. 1979) (affirming dismissal following jury verdict because statutory limitation on subject matter jurisdiction applied). The parties could not treat the facts found at trial as settled in later proceedings between them despite the expenditure of judicial and party resources trying their dispute. *Falcon v. Transportes Aeros de Coahuila, S.A.*, 169 F.3d 309, 312–13 (5th Cir. 1999) (holding that dismissal for lack of subject matter jurisdiction deprived separate order of issue preclusive effect). If the PLCAA provides a defense to individual claims rather than entire actions—an issue resolved in the affirmative in the next section—dismissal of some of the parties' claims as jurisdictionally barred by the PLCAA may require dismissal of other, fully-tried pendent claims that would not otherwise be barred. *See Arbaugh*, 546 U.S. at 514 (finding that the prospect of such dismissals counseled in favor of non-jurisdictional interpretation of statute).

Because of the textual and practical support for a non-jurisdictional reading of the PLCAA, the Court is unpersuaded by the District of Massachusetts's contrary interpretation in *Smith & Wesson*, 633 F. Supp. 3d at 441–42. The decision in *Smith & Wesson* relies solely on the plurality opinion in *Patchak v. Zinke*, which states that a

12

statute providing that actions relating to certain land "shall not be filed or maintained in a Federal court and shall be promptly dismissed" is jurisdictional. 138 S. Ct. 897, 906 (2018) (plurality opinion). Three Justices in *Patchak* found the plurality's jurisdictional interpretation of the statute a "stretch[]," and two Justices did not reach the interpretive issue. *Id.* at 919 (Roberts, C.J., dissenting); *id.* at 912 (Ginsburg, J., concurring in the judgment). In any event, the PLCAA focuses on the power of litigants to file claims rather than the power of the courts to hear them, bars state law claims in state courts, and presents significant practical problems if construed as jurisdictional, all of which distinguish it from the statute at issue in *Patchak*.

The Court concludes that the PLCAA establishes a non-jurisdictional defense.

## V.   THE PLCAA BARS PLAINTIFFS' MARKETING DEFECT AND NEGLI- GENT FAILURE TO WARN CLAIMS BUT NOT PLAINTIFFS' IMPLIED WARRANTY AND DTPA CLAIMS

Having determined that the PLCAA does not deprive the Court of jurisdiction to consider Plaintiffs' claims, the Court must determine whether the PLCAA provides a non-jurisdictional defense to the claims. To make that determination the Court must first decide another question that has divided courts: whether the defense set forth in the PLCAA applies, if at all, to entire suits, or whether it may apply to some claims in a suit but not others. *See Ramos v. Wal-Mart Stores, Inc.*, 202 F. Supp. 3d 457, 465–66 (E.D. Pa. 2016) (collecting cases).

The Court concludes that the PLCAA defense applies to individual claims and not to entire suits. The Court also concludes that the PLCAA's general prohibition on

qualified civil liability actions bars Plaintiffs' marketing defect, negligent failure to warn, implied warranty, and DTPA claims.  Because Plaintiffs' implied warranty and DTPA claims fit within statutory exceptions to the general prohibition, the Court dismisses only Plaintiffs' marketing defect and negligent failure to warn claims pursuant to the PLCAA.

### A.  The PLCAA Is a Defense to Claims, Not Suits

The text and purpose of the PLCAA support an interpretation of the statute as a defense to individual claims and not entire suits.  While the PLCAA bars certain "actions" against manufacturers and sellers of firearm-related products arising out of misuse of their products, the PLCAA contemplates that "actions" will proceed on a single legal theory.  For example, the PLCAA exempts "an action brought against a seller for negligent entrustment or negligence per se" and "an action for breach of contract or warranty in connection with the purchase of [a qualified] product" from its coverage.  15 U.S.C. §§ 7903(5)(A)(ii), (iv).  When a plaintiff asserts multiple legal theories based on facts that implicate the PLCAA, each legal theory is best understood as a separate "action" within the PLCAA's scheme.  *See U.S. ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 101–02 (3d Cir. 2000) (Alito, J.) (holding that courts must apply the public disclosure bar on "actions" brought under the qui tam provisions of the False Claims Act—which are "based on the model of a single-claim complaint"—by treating "each claim in a multi-claim complaint . . . as if it stood alone").

14

Reading the PLCAA as a prohibition on suits rather than claims would permit claims Congress sought to foreclose or foreclose claims Congress sought to permit.  In suits raising two claims, one of which the PLCAA would bar in a standalone action and the other of which the PLCAA would permit in a standalone action, treating the PLCAA as a prohibition on suits would require the Court to dismiss both claims or permit both claims to proceed.  *See, e.g.*, *Minnesota v. Fleet Farm LLC*, --- F. Supp. 3d ---, 2023 WL 4203088, at *9 (D. Minn. June 27, 2023) (taking the position that only "one claim needs to survive the preemption analysis" under the PLCAA "for the entire suit to move forward").  A litigant's "decision to join all of his or her claims in a single lawsuit should not rescue claims that would have been doomed . . . if they had been asserted in a separate action," nor should it doom claims that would have survived in a separate action.  *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 476 (2007) (citation omitted) (approving a claim-by-claim interpretation of the False Claims Act's public disclosure bar on "actions").

The Court treats the defense set forth in the PLCAA as one that may apply to some of Plaintiffs' claims but not others.

### B. The PLCAA's General Prohibition on Qualified Civil Liability Actions Encompasses Each of Plaintiffs' Claims

The Court concludes that each of Plaintiffs' claims come within the PLCAA's general prohibition on qualified civil liability actions.  For that reason, unless an exception to the general prohibition applies, the Court must dismiss all four of Plaintiffs claims.

In general, a claim against a "manufacturer or seller of a qualified product" for any relief "resulting from the criminal or unlawful misuse of a qualified product" by the claimant or a third party is a qualified civil liability action prohibited by the PLCAA.  15 U.S.C. §§ 7902(a), 7903(5)(A).  Six exceptions qualify the general rule. *Id.* § 7903(5)(A)(i)–(vi).  The parties do not dispute that rubber bullets and rubber bullet launchers are "qualified products"— ammunition and firearms—or that Defendants are manufacturers or sellers of rubber bullets and rubber bullet launchers.  *See id.* §§ 7903(2), (4), (6) (defining "Qualified product," "Manufacturer," and "Seller").

The parties dispute the culpability of DPD officers in shooting Plaintiffs with Defendants' rubber bullets.  The unifying theory behind Plaintiffs' marketing defect, negligent failure to warn, implied warranty of fitness, and DTPA claims is that Defendants caused DPD officers to shoot and injure Plaintiffs during public protests by marketing and selling rubber bullets and launchers as appropriate tools for crowd control. Compl. ¶¶ 43–63.  If the DPD officers who shot Plaintiffs were criminally or unlawfully misusing Defendants products when they did so, then the PLCAA would foreclose Plaintiffs' theory.  Plaintiffs could salvage individual claims relying on the theory only by fitting them within one of the PLCAA's exceptions.

Plaintiffs have alleged that the DPD officers who shot them unlawfully misused Defendants' rubber bullets and launchers.  In the Separate Civil Proceeding Plaintiffs filed against the officers, Plaintiffs assert that the officers violated 42 U.S.C. § 1983 by shooting and injuring them with Defendants' rubber bullets.  *E.g.*, Doc. No. 1 ¶¶ 94–

99, *Williams*, No. 3:20-cv-01526-L; *id.* Doc. No. 39 ¶¶ 94–99; *id.* Doc. No. 109 ¶ 121. Since "conduct that violates a statute . . . as it relates to the use of a qualified product" is unlawful misuse of the product that triggers application of the PLCAA, Plaintiffs' assertions subject their claims to the PLCAA's general prohibition on qualified civil liability actions.  15 U.S.C. § 7903(9).

Plaintiffs contend that their pleadings in the Separate Civil Proceeding cannot be considered in ruling upon Defendants' Motion to Dismiss, but the Court finds that judicial notice of the pleadings is proper because Plaintiffs have not qualified or disavowed the pleadings.  The Court may take judicial notice of a "fact that is not subject to reasonable dispute."  Fed. R. Evid. 201(b).  Public records, like Plaintiffs' pleadings, are among the matters of which the Court may take judicial notice in resolving a motion to dismiss.  *See Funk*, 631 F.3d at 783 (approving judicial notice of FDA letter in ruling on motion to dismiss).  The Court may only take judicial notice of the truth or falsity of the contents of public records if the contents are not subject to reasonable dispute. *Koch Project Sols., L.L.C. v. All. Process Partners, L.L.C.*, 2022 WL 16859961, at *9 (5th Cir. Nov. 11, 2022) (per curiam).  Plaintiffs' pleadings satisfy that test.  Plaintiffs' pleadings in one case are non-binding admissions that may be judicially noticed on a motion to dismiss in a related case.  *Sanders v. Univ. of Tex. Pan Am.*, 776 F. App'x 835, 838 (5th Cir. 2019) (per curiam) (affirming District Court's decision to take judicial notice of dates alleged in superseded complaint in separate action, which established defendants' statute of limitations defense at the motion to dismiss stage).  Since

Plaintiffs fail to explain or controvert their admissions in the Separate Civil Proceeding, the Court may treat the admissions as undisputed and rely upon them to dismiss Plaintiffs' complaint. *Id.*; *cf. also Knighton v. Univ. of Tex. at Arlington*, 2019 WL 13252502, at *3 (N.D. Tex. Aug. 20, 2019) (Means, J.) (declining to take judicial notice of plaintiff's prior pleading where plaintiff disputed her prior allegations).

Because the Court dismisses Plaintiffs claims without prejudice, the Court makes clear that it does not rely on the Dallas County District Attorney's allegations in the Separate Criminal Proceedings against the DPD officers who allegedly shot Plaintiffs. Plaintiffs may fairly be expected to explain their own earlier admissions in subsequent pleadings or briefing, but Plaintiffs cannot be presumed to possess sufficient information to rebut the allegations of the District Attorney at the pleading stage. *See Cox v. Kaelin*, 577 F. App'x 306, 309–310 (5th Cir. 2014) (noting that district court properly refused to consider third party's pleadings on a motion to dismiss in a separate case).

The Court turns to the question whether Plaintiffs' claims, though encompassed by the PLCAA's general prohibition on qualified civil liability actions, fit within exceptions to general rule.

### C. Exceptions to the PLCAA's General Prohibition on Qualified Civil Liability Actions Save Plaintiffs' Implied Warranty and DTPA Claims

The Court concludes that exceptions to the PLCAA's general prohibition on qualified civil liability actions apply to Plaintiffs' implied warranty and DTPA claims.

Although the Court ultimately determines that these claims fail on the merits, the PLCAA does not bar them.  Since Plaintiffs' marketing defect and negligent failure to warn claims are within the scope of the PLCAA's general prohibition on qualified civil liability actions and Plaintiffs do not contend that these claims are exempt from the PLCAA, the Court treats both claims as barred by the PLCAA and begins its analysis of the PLCAA's exceptions with Plaintiffs' warranty claims.

1.  *The Warranty Exception to the PLCAA Saves Plaintiffs' Warranty Claims*

Whether styled as a claim for breach of warranty or a claim that Defendants' breach of warranty violated the DTPA, Plaintiffs' warranty-based claims are exempt from the PLCAA's ban on qualified civil liability actions.  Under an exception to the PLCAA, an action for "breach of contract or warranty in connection with the purchase" of a firearm, ammunition, or other qualified product is not a qualified civil liability action.  15 U.S.C. § 7903(5)(iv).  Plaintiffs allege both the existence of a warranty— the warranty of fitness implied by Texas law—and a breach of the warranty in connection with the purchase of firearms and ammunition—Defendants' sale to the City of Dallas and the DPD of rubber bullets and launchers that are unfit for the crowd control purpose for which they were sold.  Compl. ¶¶ 53–54, 59.  Those allegations bring Plaintiffs' implied warranty and warranty-based DTPA claims within the PLCAA's warranty exception.

Defendants ask the Court to limit the warranty exception to claims "sounding in contract," Doc. No. 26 at 11, but that would make the PLCAA's reference to

19

"warranty" claims in addition to "breach of contract" claims superfluous.  15 U.S.C. § 7903(5)(iv).  Congress gave no indication that it intended the term "warranty" to exclude a subset of the well-established warranty theories derived, like those advanced by Plaintiffs, from the Uniform Commercial Code.  *See Mac's Shell Serv. v. Shell Oil Prods. Co. LLC*, 559 U.S. 175, 185 (2010) (in the absence of contrary evidence, interpreting terms in federal statute in accordance with their meanings under the Uniform Commercial Code and in other contexts).  Other exceptions to the PLCAA do not evidence an intention to restrict the warranty exception to contract-based claims.  The PLCAA expressly excepts a range of tort claims from its coverage, including tort claims, like design defect claims, that do not require a plaintiff to be a party to or a third-party beneficiary of a contract.  *Id.* § 7903(5)(v).

Defendants' authority for limiting the warranty exception to contract-based claims is unpersuasive.  Defendants rely on a decision of the Massachusetts Appeals Court affirming the dismissal of an implied warranty of merchantability claim pursuant to the PLCAA.  *Ryan v. Hughes-Ortiz*, 959 N.E.2d 1000, 1009 (Mass. Ct. App. 2012).  The Massachusetts Appeals Court cautioned that it did not apply the warranty exception because the plaintiff forfeited the argument that the exception applied, so the dismissal of the plaintiff's implied warranty claim provides no guidance for the application of the warranty exception.  *See id.* at 1008 n.13 ("Although the [PLCAA] articulates six exceptions . . ., the plaintiff raises only the possibility that her claims survive due to the

design defect exception.  We thus need not examine any of the other exceptions to the PLCAA.").

Applying the plain language of the exception, the Court concludes that Plaintiffs' implied warranty of fitness claim and warranty-based DTPA claim are exempt from the PLCAA's general prohibition on qualified civil liability actions.

### 2. *The Predicate Exception to the PLCAA Saves Plaintiffs' Non-Warranty-Based DTPA Claims*

A second exception to the PLCAA's general prohibition on qualified civil liability actions saves Plaintiff's remaining DTPA claims.  That exception, commonly known as the "predicate exception," provides that a claim is exempt from the PLCAA's prohibition if the claim satisfies a two-pronged test.  First, the claim must involve a knowing violation of a predicate statute—meaning a "State or Federal statute applicable to the sale or marketing" of a qualified product—by the manufacturer or seller of the qualified product.  15 U.S.C. § 7903(5)(A)(iii).  Second, the statutory violation must be the "proximate cause of the harm for which relief is sought." *Id.*

Setting aside Plaintiff's warranty-based DTPA claim, which is exempt from the PLCAA under the PLCAA's warranty exception, Plaintiffs' DTPA claims satisfy both requirements of the predicate exception.

### i. Plaintiffs Plead a Predicate Statutory Violation

Plaintiffs satisfy the predicate exception's first requirement by alleging that Defendants knowingly violated provisions of the DTPA governing the marketing of goods when Defendants promoted and sold launchers and rubber bullets to the City of Dallas

and the DPD.  Compl. ¶¶ 57–62.  Plaintiffs contend that Defendants misleadingly stated or implied that Defendants' rubber bullets and launchers were suitable for crowd control in violation of DTPA provisions prohibiting a person from:

> (5)  representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;
>
> (7)  representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;
>
> (9)  advertising goods or services with intent not to sell them as advertised; [and]
>
> (24)  failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

Tex. Bus. & Com. Code § 17.46(b)(5), (7), (9), (24); Compl. ¶ 57.  Plaintiffs also contend that Defendants' allegedly misleading marketing efforts constitute an "unconscionable action or course of action" prohibited by the DTPA.  Tex. Bus. & Com. Code § 17.50(a)(3); Compl. ¶ 60.

The Court does not suggest that the violation of any statute that might apply to the sale or marketing of a qualified product will satisfy the predicate exception's first requirement.  As the Second Circuit and the Ninth Circuit have noted, treating every statutory violation that relates to the sale or marketing of a qualified product as a trigger for the predicate exception would permit actions Congress expressly sought to foreclose: actions "without foundation" in historical jurisprudence that seek to hold

firearms manufacturers and sellers "liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended." 15 U.S.C.S. § 7901(5), (7); *City of New York v. Beretta*, 524 F.3d 384, 402–04 (2d Cir. 2008); *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135–37 (9th Cir. 2009).  An expansive treatment of the predicate exception also sits uneasily with the examples of claims qualifying for the exception that Congress provided in the PLCAA. Each example involves a statute that "pertain[s] specifically to sales and manufacturing activities, and most also target the firearms industry specifically."  *Ileto*, 565 F.3d at 1134.  Expressly exempt from the PLCAA under the predicate exception is:

(I)   any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

(II)  any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18.

15 U.S.C. § 7903(5)(A)(iii).  Considering Congress's purpose in enacting the PLCAA and the examples Congress gave of cases within the scope of the predicate exception, the Second Circuit in *Beretta* and the Ninth Circuit in *Glock* rejected the extension of the exception to novel theories that firearms manufacturers and sellers are liable in

negligence or public nuisance by supplying firearms to purchasers who illegally sell or misuse the firearms. *Beretta*, 524 F.3d at 404; *Ileto*, 565 F.3d at 1138.

Plaintiffs' DTPA claims, by contrast, fit comfortably within the predicate exception. Unlike the generalized negligence and public nuisance claims considered by the Second Circuit and the Ninth Circuit, Plaintiffs' claims rely on statutory provisions that specifically regulate the marketing and sale of goods, including the firearms and ammunition manufactured and sold by Defendants. Tex. Bus. & Com. Code §§ 17.46(b)(5), (7), (9), (24); 17.50(a)(3). The DTPA is an important source of authority permitting Texas consumers to obtain redress for deceptive and unfair practices in the marketing and sale of goods. *See, e.g., Pennington v. Singleton*, 606 S.W.2d 682, 690 (Tex. 1980) (noting that the DTPA reduces the need for government policing of deceptive trade practices by reducing obstacles to consumer suits); *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985) (Gonzalez, J., concurring in the judgment on motion for rehearing) (noting that the DTPA "has given consumers a much needed remedy" against "deception and unconscionable conduct").

Plaintiffs' DTPA claims also have a strong historical pedigree that the claims in *Beretta* and *Glock* lacked. Apart from Plaintiffs' claim that Defendants withheld information from the City of Dallas and the DPD to induce them to purchase Defendants' launchers and rubber bullets, each of Plaintiffs' DTPA claims derives from statutory language enacted more than thirty years before the enactment of the PLCAA. Deceptive Trade Practices—Consumer Protection Act, Acts 1973, 63rd Leg., ch. 143

24

(H.B. 417), § 1.  The DTPA is also part of a longer tradition of statutes patterned on the Federal Trade Commission Act.  *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 686 (5th Cir. 1986); *see also* P. Maxwell & J. Longley, *History of Article 21.21 and Deceptive Trade Practices Act*, 9 J. TEX. INS. L. 20, 25 (2008) (noting that, by 1981, every state had joined Texas in passing a statute modeled on the Federal Trade Commission Act).

Consistent with Congress's stated purpose in enacting the PLCAA, Plaintiffs may not rely "solely . . . [on] the criminal or unlawful misuse of firearm products or ammunition products by others" to hold Defendants liable under the DTPA.  15 U.S.C. § 7901(b)(1).  To prove their DTPA claims, Plaintiffs must demonstrate that Defendants are guilty of deceptive marketing or similar wrongdoing.  Tex. Bus. & Com. Code §§ 17.46(b)(5), (7), (9), (24); 17.50(a)(3); *see also* 6 G. Abbott & D. Coulson, TEX. PRAC. GUIDE BUS. & COM. LITIG. § 33:8 (under the DTPA, "liability will not be imposed merely because a defendant introduced a particular product into the stream of commerce").

With respect to the provisions of the DTPA invoked by Plaintiffs, the Court joins the courts holding that prohibitions on unfair or deceptive trade practices are exempt from the PLCAA under the predicate exception.  *See Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 308 (Conn. 2019) (Connecticut Unfair Trade Practice Act); *Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1138 (D. Nev. 2019) (Nevada Deceptive Trade Practices Act).

ii.    <u>Plaintiffs Plead Proximate Causation</u>

As to the predicate exception's causation requirement, Plaintiffs have adequately pled that Plaintiff's injuries are the proximate result of Defendants' alleged violations of the DTPA.  Plaintiffs allege that police departments, including the DPD, "are sold [rubber bullets] specifically for use in crowd control" through advertisements that misleadingly imply the bullets are safe for such use.  *Id.* ¶¶ 14, 39.  Plaintiffs allege that because Defendants misled the DPD about the safety of doing so, DPD officers fired rubber bullets at crowds of protestors and caused some of the protestors, including Plaintiffs, personal injuries and emotional distress.  *Id.* ¶¶ 20–39, 56.  Plaintiffs' allegations set forth the familiar elements of proximate cause: conduct that actually, naturally, and foreseeably resulted in Plaintiffs' injuries.  74 Am Jur 2d Torts § 27.  Though Plaintiffs at times characterize Defendants' conduct as the "producing cause" of Plaintiffs' injuries—a Texas-law term for the proximate cause, minus the element of foreseeability, *Pope v. Rollins Protective Servs. Co.*, 703 F.2d 197, 202 n.4 (5th Cir. 1983)—the Court treats Plaintiffs' factual allegations, not the legal labels Plaintiffs assign to them, as controlling.

That Plaintiffs have pled proximate causation does not mean that they have pled causation for purposes of their non-warranty-based DTPA claims.  Even if Defendants wrongfully induced DPD officers to shoot Plaintiffs with rubbers bullets by misrepresenting the proper uses of the bullets, Plaintiffs cannot recover for their resulting injuries unless they detrimentally relied on Defendants' misrepresentations or Defendants'

conduct was unconscionable.  Tex. Bus. & Com. Code § 17.50(a)(1)(B).  Because the Parties have not briefed the issues, the Court does not decide whether Plaintiffs' have sufficiently pled reliance or unconscionability.

Having found as a threshold matter that the PLCAA bars Plaintiffs' marketing defect and negligent failure to warn claims but not Plaintiffs' implied warranty and DTPA claims, the Court turns to the merits of Plaintiffs' pleading.

## VI.   PLAINTIFFS' MARKETING DEFECT CLAIM IS ADEQUATELY PLED, BUT THEIR NEGLIGENT FAILURE TO WARN, IMPLIED WARRANTY, AND DTPA CLAIMS ARE NOT

Because the Court dismisses Plaintiffs' claims without prejudice, the Court addresses the adequacy of Plaintiffs' pleading of each of their claims.  The Court concludes that Plaintiffs' marketing defect claim would survive Defendants' Motion to Dismiss but for the protections Defendants enjoy under the PLCAA.  Plaintiffs' negligent failure to warn, implied warranty, and DTPA claims fail regardless of the PLCAA's application.

### A. Plaintiffs' Marketing Defect Claim Is Adequately Pled

Plaintiffs' strict liability marketing defect allegations check the necessary boxes. Under Texas law, to state a strict liability marketing defect claim with respect to a product, Plaintiffs must plead that:

(1) a risk of harm is inherent in the product or may arise from the intended or reasonably anticipated use of the product; (2) the product supplier actually knows or reasonably foresees the risk of harm at the time the product is marketed; (3) the product possesses a marketing defect; (4) the absence of the warning or instructions renders the product

unreasonably dangerous to the ultimate user or consumer of the product; and (5) the failure to warn cause[d] the product user's injury.

*Olympic Arms, Inc. v. Green*, 176 S.W.3d 567, 578 (Tex. App.–Houston [1st Dist.] 2004, no pet.).  Defendants purport to find two flaws in Plaintiffs' pleading.

Defendants first contend that Plaintiffs' pleading is insufficiently specific and fails to explain how the warnings Defendants attached to their launchers and rubber bullets were inadequate or could have been improved.  Doc. No. 20 at 25.  Plaintiffs allege that Defendants knew Defendants' launchers and rubber bullets were unreasonably dangerous when used for the purpose of crowd control, but misleadingly informed purchasers that the products were safe for that purpose.  Compl. ¶¶ 18–20, 43–47.  Plaintiffs also allege that Defendants' failure to warn the City of Dallas and the DPD that Defendants' products were unsafe as crowd control devices caused DPD officers to shoot Plaintiffs and other protestors with Defendants' rubber bullets in crowd control settings.  *Id.* ¶¶ 21–37, 44.  Plaintiffs need not propose in their pleading a specific warning Defendants should have used to alert the City and the DPD to the dangers of Defendants' products; Plaintiffs' existing allegations give Defendants fair notice of Plaintiffs' claim.  *See Gehan Homes, Ltd. v. NIBCO Inc.*, 2020 WL 5110707, at *11 (W.D. Tex. Aug. 31, 2020) (denying motion to dismiss where defendant advertised leaking pipe's compliance with a manufacturing standard related to leaks and failed to warn that pipe was noncompliant with the standard); *cf. also Jefferson v. Grayson Cnty.*, 2012 WL 1574203, at *5 (E.D. Tex. May 2, 2012) (recommending dismissal where seller defectively marketed dangerous Taser device as "less lethal" because allegations

may "satisfy some of the elements" of a marketing defect claim, but plaintiff failed to allege which device seller defectively marketed), *rep. & rec. adopted*, Doc. No. 55, No. 4:11-cv-00143 (E.D. Tex. May 25, 2012).

Defendants also contend that they have no duty to warn users of their launchers and rubber bullets that the products are dangerous because the danger is "open and obvious." Doc. No. 20 at 25. The Court disagrees because Plaintiffs' theory of duty does not rely solely on the allegation that Defendants' products are generally dangerous. A defendant has no duty to warn of a product's dangers that are within the common knowledge of the product's ordinary users. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 429 (Tex. 1997) (general dangers of smoking were within the common knowledge of consumers, but addictive qualities of nicotine were not). Courts have repeatedly held, albeit often at the summary judgment stage, that a defendant has no duty to warn of the well-known fact that guns are dangerous. *E.g.*, *Diggles v. Horwitz*, 765 S.W.2d 839, 842 (Tex. App.–Beaumont 1989, writ denied); *Keene v. Sturm, Ruger & Co.*, 121 F. Supp. 2d 1063, 1069 (E.D. Tex. 2000). Plaintiffs allege that Defendants' launchers and rubber bullets are not just dangerous but more dangerous than an ordinary consumer of such products might expect. Plaintiffs cite studies and reports purportedly finding that products like Defendants' cause severe injuries and death too frequently for safe use in the crowd control settings for which manufacturers and sellers promote the products. Compl. ¶¶ 38–42. Whether Defendants' products are more dangerous than ordinary purchasers understand them to be is an issue better resolved

after additional factual development. *See Roberts v. Zev Techs., Inc.*, 2015 WL 7454688, at *3 (W.D. Tex. Nov. 23, 2015) (denying motion to dismiss where defendant failed to warn that defendant's product increased the ordinary danger that gun would discharge when dropped).

The Court therefore concludes that Plaintiffs' strict liability marketing defect claim, though barred by the PLCAA, is otherwise adequately pled.

### B. Plaintiffs' Negligent Failure to Warn Claim Is Inadequately Pled Because Plaintiffs' Have Not Plausibly Alleged Causation

Plaintiffs' negligent failure to warn claim is not sufficiently pled. The claim's dispositive shortcomings are the absence of a duty to warn, and the absence of a causal connection between Defendants' breach of any duty to warn and Plaintiffs' alleged injuries.

As pled, the theory of Plaintiffs' negligent failure to warn claim is that Defendants negligently breached a duty to warn the public about the dangers of Defendants' launchers and rubber bullets. Compl. ¶ 49. In their briefing, Plaintiffs concede that Defendants had no duty to warn the general public and contend that Defendants negligently breached a duty to warn the DPD of the products' hazards. Doc. No. 24 at 15. Neither the theory Plaintiffs pled nor the theory they now advance identifies a duty running from Defendants to Plaintiffs, so both are insufficient to support Plaintiffs' claim. *See Walker v. Honest Indus., Inc.*, 2021 WL 394830, at *2 (S.D. Tex. Feb. 3, 2021) (dismissing negligent failure to warn claim where plaintiff did not dispute that defendant owed no duty to him).

Assuming Defendants nonetheless owed a duty to the general public as Plaintiffs pled, Plaintiffs fail to plausibly allege that communicating the dangers posed by Defendants' launchers and rubber bullets to members of the general public who did not use the products would have prevented DPD officers from using the products to shoot Plaintiffs. *See Ravenell v. Republic Tobacco Co.*, 1996 WL 33317575, at *5 (W.D. Tex. Apr. 4, 1996) (dismissing negligent failure to warn claim where tobacco companies allegedly failed to warn incarcerated plaintiff of the dangers of secondhand smoke because plaintiff could not avoid smoke generated by third parties even if warned of its dangers).

In addition to dismissing Plaintiffs' failure to warn claim as barred by the PLCAA, the Court dismisses the claim for failure to plausibly allege duty or causation.

### C. Plaintiffs' Implied Warranty of Fitness Claim Is Inadequately Pled Because Plaintiffs Do Not Plausibly Plead the Existence of a Valid Warranty

Plaintiffs' implied warranty claim fails because Plaintiffs do not plead facts giving rise to the warranty they invoke. Plaintiffs do not contend that Defendants launchers and rubber bullets are unfit for their ordinary use—in which case their sale might breach an implied warranty that the products are "merchantable," *Advon Corp. v. Coopwood's Air Conditioning Inc.*, 517 F. Supp. 3d 656, 666 (S.D. Tex. 2021)—but rather that Defendants' products are unfit for the "particular" purpose of crowd control for which the City of Dallas and the DPD purchased them. Compl. ¶¶ 53–54.

Plaintiffs' implied warranty theory founders on their allegation that crowd control is the ordinary use for Defendants' launchers and rubber bullets. An implied warranty that products are fit for a particular purpose does not arise when the products are purchased and used for their ordinary purpose. *Elmazouni v. Mylan, Inc.*, 220 F. Supp. 3d 736, 744–45 (N.D. Tex. 2016) (Lynn, C.J.) (dismissing implied warranty claim where plaintiffs pled that decedent used medical patch for ordinary purpose). Otherwise, the line between implied warranty claims based on the merchantability of products and implied warranty claims based on the fitness of products for a particular purpose would blur. *See Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 686 (N.D. Tex. 2006) (Fish, C.J.) (citation omitted) (dismissing claim that driving in Texas is a particular purpose for a car because a "particular purpose 'envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability'"). Plaintiffs allege both that launchers and rubber bullets like Defendants' are "used commonly in crowd-control settings" and that Plaintiffs' injuries are the result of the DPD's use of Defendants' products for crowd control. Compl. ¶¶ 12, 38. Plaintiffs do not allege that the DPD's use of Defendants' products involved unusual crowd control techniques. *Cf. Bob Davis Paint & Drywall Inc. v. Valspar Corp.*, 452 F. Supp. 3d 589, 598–99 (S.D. Tex. 2020) (use of paint on houses in harsh beachfront environment not an ordinary purpose).

Plaintiffs have not stated a claim for breach of an implied warranty that Defendants' products are fit for a particular purpose.

### D. Plaintiffs' DTPA Claim Is Inadequately Pled Because Plaintiffs Fail to Allege That They Are Consumers with Standing to Sue

The Court dismisses Plaintiffs last claim, for violations of the DTPA, because Plaintiffs lack statutory standing to sue.  The DTPA creates a cause of action for a "consumer," defined as "an individual, partnership, corporation, [the State of Texas], or a subdivision or agency of [the] state who seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com. Code Ann. §§ 17.45(4), 17.50(a).  Plaintiffs are not consumers, either directly or indirectly.

Plaintiffs cannot sue under the DTPA as direct consumers because Plaintiffs never directly sought nor acquired any goods or services. *See Broadnax v. Kroger Texas, L.P.*, 2005 WL 2031783, at *8 (Tex. App.–Dallas Aug. 24, 2005, no pet.) (affirming summary judgment against plaintiff because party detained and patted down by security guard was not a consumer of security services); *Miller v. Kim Tindall & Assocs., LLC*, 633 S.W.3d 102, 106 (Tex. App.–El Paso 2021, pet. denied) (affirming dismissal of DTPA claim because party that requested transcript but did not acquire or seek to acquire it by purchase or lease was not a consumer).  Plaintiffs allege that the DPD sought and acquired Defendants' launchers and rubber bullets and that DPD officers shot Plaintiffs using Defendants' products.  Compl. ¶¶ 21–37, 59.

Plaintiffs also cannot sue under the DTPA as indirect consumers of the launchers and rubber bullets.  A plaintiff who does not directly seek or acquire goods or services

by lease or purchase is not a consumer entitled to sue under the DTPA unless the plaintiff is the third-party beneficiary of a transaction "specifically required by or intended to benefit the [plaintiff] and the good or service was rendered to benefit the [plaintiff]." *Lukasik v. San Antonio Blue Haven Pools*, 21 S.W.3d 394, 401 (Tex. App.–San Antonio 2000, no pet.) (collecting cases).  Plaintiffs' alleged relationship to the DPD's purchase of Defendants' products is incidental at best.  Plaintiffs do not allege that they were involved in the purchase transaction. *Cf. Rodriguez v. Ed Hicks Imps.*, 767 S.W.2d 187, 191 (Tex. App.–Corpus Christi 1989, no writ) (plaintiff not a third-party beneficiary of purchase of vehicle for the use of another where plaintiff was uninvolved in the purchase transaction).  Nor do Plaintiffs plausibly allege that the DPD purchased Defendants' products with the intention of benefiting Plaintiffs rather than furthering the DPD's own law enforcement purposes. *Cf., e.g.*, *Vinson* & *Elkins v. Moran*, 946 S.W.2d 381, 408 (Tex. App.–Houston [14th Dist.] 1997, writ dism'd by agr.) (retention of counsel to assist in administration of an estate intended to benefit executors, not beneficiaries); *Lara v. Lile*, 828 S.W.2d 536, 542 (Tex. App.–Corpus Christi 1992, writ denied) (employer's acquisition of "safety-conscious" transportation services not primarily intended to benefit plaintiff employee although incidentally providing plaintiff with a safer workplace).

Because Plaintiffs are not consumers, they cannot maintain their DTPA claims.

## VII.    CONCLUSION

For the foregoing reasons, each of Plaintiffs' claims is **DISMISSED** without prejudice.  Plaintiffs **MAY FILE** a motion for leave to file an amended pleading within 14 days of the entry of this Order.  If Plaintiffs file such a motion, Plaintiffs shall attach to the motion (1) their proposed amended pleading and (2) a redline showing the differences between that pleading and Plaintiffs' Second Amended Complaint.  Defendants' pending Motion for Summary Judgment, Doc. No. 33, is **DENIED AS MOOT** without prejudice.

If, in connection with any subsequent filing or oral motion in this case, a Party requests that the Court take judicial notice of any matter, that Party **SHALL FILE** a copy of the material sought to be noticed concurrently with the request for judicial notice.

**SO ORDERED**.

Signed September 11th, 2023.

ED KINKEADE
UNITED STATES DISTRICT JUDGE