IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VINCENT DOYLE, BRANDON SAENZ, DAVID MCKEE, RANDI ROGERS, and TASIA WILLIAMS, | § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:22-CV-1536-K |
| v. | § § | |
| COMBINED SYSTEMS, INC. and PENN ARMS, INC., | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants Combined Systems, Inc. and Penn Arms, Inc.'s (together, the "Defendants") Motion to Dismiss Plaintiffs' Third Amended Petition for Failure to State a Claim and Brief in Support (together, the "Motion") (Doc. Nos. 49 & 50), Plaintiffs' Response to Defendants' Motion (the "Response") (Doc. No. 51), Defendants' Reply in Support of the Motion and Brief in Support (together, the "Reply") (Doc. Nos. 52 & 53), and Plaintiffs' Third Amended Complaint (the "Amended Complaint") (Doc. No. 47). The Court has carefully considered the Motion, the Response, the Reply, and the Amended Complaint, as well as the applicable law and the relevant portions of the record. The Court **GRANTS** the Motion.

## I.    Factual Background

The Court previously recited the relevant factual background in its Memorandum Opinion and Order granting Defendants' First Amended Motion to

Dismiss for Plaintiffs' Failure to State a Claim. *See* Doc. No. 40. However, the Court will again address the relevant background leading to the present claims.

After the death of George Floyd, a black man killed by Minneapolis police officers in May of 2020, protests occurred across the country. *See* Third Am. Compl. at 2–3, ¶11. These protests also occurred in Dallas, Texas beginning a few days after George Floyd's death and continuing through the summer months. *Id.* Plaintiffs Vincent Doyle, Brandon Saenz, David McKee, Randi Rogers, and Tasia Williams each took part in the Dallas-based protests at various points in time. *See generally id.* On May 30, 2020, Vincent Doyle went to downtown Dallas to photograph and film the protests. *Id.* at 9, ¶21. Doyle stated that the protest was peaceful when police officers ordered the crowds to disperse. *Id.* Doyle moved away to a parking lot, where he claims a police officer shot him in the face with a "40mm single shot launcher compact" (the "launcher(s)") and rubber "kinetic impact projectiles" (the "rubber bullets"), which were produced by Defendants. *Id.* at 9–10, ¶22; 1, ¶6. Doyle alleges that he sustained significant damage to his left eye and underwent multiple surgeries. *Id.* at 11, ¶24.

Plaintiff Brandon Saenz was in the area of the Dallas-based protests on May, 30, 2020, the same day Doyle was shot with the rubber bullet. *Id.* at 11, ¶25. Saenz was looking for his friend when he claims a police officer shot him in the eye with a rubber bullet. *Id.* Saenz alleges that he lost his left eye and also sustained significant injuries. *Id.* at 11–12, ¶25.

Plaintiff Randi Rogers watched, but did not participate, in the Dallas-based protests on May 30, 2020. *Id.* at 12, ¶26. Rogers complied with police orders to walk in a certain direction, but Rogers briefly stopped to take a phone picture of police officers wearing riot equipment. *Id.* at 13 , ¶26. Rogers alleges that a police officer then shot her with a rubber bullet, which caused significant injuries. *Id.* at 13, ¶¶26–28.

Plaintiff David McKee was also present at the May 30, 2020 protests because his friend requested that he go with her to downtown Dallas so she could photograph the protests. *Id.* at 14, ¶29. As McKee walked with his friend, he encountered a wave of people running from "smoke and gas," and he went into the crowd to assist. *Id.* at 14, ¶¶29–30. Eventually, McKee encountered a group of police officers that were carrying "shotguns and grenade launchers." *Id.* at 15, ¶30. Once the police officers ordered the crowds to disperse, McKee moved back while holding up a sign he had found earlier. *Id.* at 15, ¶31. McKee claims that he was then shot by two rubber bullets in both the bicep and groin. *Id.* at 15, ¶31. McKee alleges that he lost one of his testicles due to the incident. *Id.* at 15, ¶32.

Plaintiff Tasia Williams protested on the Margaret Hunt Hill Bridge leading into downtown Dallas on June 1, 2020. *Id.* at 16, ¶33. Police deployed smoke canisters and tear gas at protesters on the bridge, which Williams retreated from. *Id.* at 17, ¶36. Williams claims that she was then shot in the thigh by a rubber bullet, causing significant injuries to her leg. *Id.* at 17–18, ¶¶36–37.

All Plaintiffs allege that Defendants' products, the rubber bullets and launchers made of materials such as foam, plastic, rubber, wood, or "beanbag" material, are excessively dangerous and cause severe injuries. *See id.* at 18–20, ¶¶38–42. Specifically, Plaintiffs allege that these products "cannot be used safely" by police officers. *Id.* at 19, ¶39. Further, Plaintiffs cite to studies that they allege support the conclusion that rubber bullets and other "kinetic impact projectiles" are excessively dangerous, cause serious injury, and establish that "[kinetic impact projectiles] are not appropriate weapons for use in crowd-control settings[.]" *Id.* at 20, ¶¶40–41.

## II.    Procedural History

A brief explanation of this case's procedural history is important to understanding the posture of the present Motion. On May 31, 2022, Vincent Doyle, David McKee, and Brandon Saenz filed their Original Petition in Texas state court, seeking damages caused by Defendants' allegedly misleading marketing of the launchers and the rubber bullets that the Dallas Police Department ("DPD") purchased and subsequently used against Plaintiffs. *See generally* Doc. No. 1 at 14–46 ("Exhibit C"). That same day, Randi Rogers and Tasia Williams joined in an Amended Original Petition. *See id.* at 49 ("Exhibit D"). On July 15, 2022, Defendants removed this case to federal court, and on August 30, 2022, Plaintiffs filed their Second Amended Complaint. *See* Doc. Nos. 1 & 14.

In their Second Amended Complaint, Plaintiffs alleged four causes of action: "Strict Liability: Marketing Defect," "Negligent and False Marketing" (i.e. negligent

failure to warn), "Breach of Implied Warranty of Fitness for a Particular Purpose," and "Violations of the Texas Deceptive Trade Practices Act." Doc. No. 14 at 21–27, ¶¶43–63. In response to the Second Amended Complaint, Defendants filed their First Amended Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "First Amended Motion to Dismiss"). *See* Doc. No. 19. The Court subsequently *granted* Defendants' First Amended Motion to Dismiss. *See* Doc. No. 40 (emphasis added).

In the Court's previous Memorandum Opinion and Order (Doc. No. 40), the Court dismissed *without* prejudice each of Plaintiffs' claims asserted in their Second Amended Complaint. *See* Doc. No. 40 at 35 (emphasis added). The Court found that the Protection of Lawful Commerce in Arms Act ("PLCAA") barred Plaintiffs' marketing defect and negligent failure to warn claims. *Id.* at 13. The Court further found that Plaintiffs' warranty claim, at the time a breach of the implied warranty of fitness for a particular purpose, was inadequately pled because "Plaintiffs [did] not allege that the [DPD's] use of Defendants' products involved unusual crowd control techniques." *Id.* at 32. Rather, the Court found that the launchers and rubber bullets were used for their ordinary purpose, namely crowd control. *See id.* Lastly, the Court found that Plaintiffs inadequately pled their claim for violation of the Texas Deceptive Trade Practices Act ("Texas DTPA") because they failed to establish consumer status. *Id.* at 33. Plaintiffs could not bring this claim as a "direct consumer" because they "never directly sought nor acquired any goods or services" from Defendants. *Id.*

Likewise, Plaintiffs could not bring this claim as "indirect consumers" because Plaintiffs did not plausibly allege that the DPD purchased Defendants' launchers and rubber bullets "with the intention of benefitting Plaintiffs rather than furthering the DPD's own law enforcement purposes." *Id.* at 34. However, the Court provided Plaintiffs time to file a further amended complaint. *Id.* at 35.

On October 6, 2023, Plaintiffs filed their Motion for Leave to File Third Amended Complaint (Doc. No. 43), including their Proposed Third Amended Complaint (Doc. No. 43-1). Thereafter, the Court issued an Order (Doc. No. 44) requiring Plaintiffs to file supplemental briefing that "explain[s] why their proposed amended strict liability marketing defect and negligent failure to warn allegations . . . remedy the obstacles to the claims described in the Court's [Memorandum Opinion and Order] []." Court's Oct. 11, 2023 Order at 2. Specifically, in their Proposed Third Amended Complaint, Plaintiffs did not propose any changes to their marketing defect claim and only proposed a minimal and unresponsive change to their negligent failure to warn claim. *See id.* at 1. Plaintiffs then filed their Supplemental Brief in Support of Plaintiffs' Motion for Leave to File Third Amended Complaint (Doc. No. 45).

In its Memorandum Opinion and Order issued on October 30, 2023 (Doc. No. 46), the Court dismissed Plaintiffs' strict liability marketing defect and negligent failure to warn claims **with** prejudice because "[n]one of [Plaintiffs' proposed] changes [were] responsive to the Court's order of dismissal." Doc. No. 46 at 1 (emphasis added). The Court allowed Plaintiffs' proposed amendments to their remaining claims. *See id.* at 7.

6

Plaintiffs then filed their Third Amended Complaint (Doc. No. 47), the live pleading in this case, asserting claims for breach of the implied warranty of merchantability and violation of the Texas DTPA. Third Am. Compl. at 21–24, ¶¶43–54. Defendants subsequently filed the present Motion, to which Plaintiffs filed their Response and Defendants filed their Reply. Therefore, the Motion is now ripe for determination.

## III.    Legal Standard

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must determine whether the plaintiff(s) has sufficiently stated a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). The court must presume all well-pleaded facts in the complaint to be true and resolve any ambiguities or doubts regarding the sufficiency of the claims in plaintiff's favor. *Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (although the court must take as true all of the factual allegations in the complaint, it is not "bound" to accept as true a legal conclusion couched as a factual allegation.). In reviewing a Rule 12(b)(6) motion to dismiss, the court may only consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the

complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Kane Enters.*, 322 F.3d at 374 (plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal for failure to state a claim). If a plaintiff pleads facts which allow the court to reasonably infer that the defendant is liable for the alleged misconduct, the claim is facially plausible. *See Twombly*, 550 U.S. at 570. While facial plausibility is not a "probability requirement," it mandates "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 556 ("[f]actual allegations must be enough to raise a right to relief above the speculative level."). In other words, the alleged facts must nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

## IV.    Application of the Law

Defendants Combined Systems, Inc. and Penn Arms, Inc. move the Court to dismiss Plaintiffs' claims. First, Defendants argue that Plaintiffs' claim for violation of the Texas DTPA must fail because Plaintiffs are not "consumers" as defined by the Texas DTPA. Second, Defendants argue that Plaintiffs' new breach of warranty claim

must also fail because Plaintiffs have not stated a plausible claim for breach of the implied warranty of merchantability.

### A.    Claim for Violation of the Texas DTPA

Plaintiffs claim that Defendants violated the Texas DTPA by selling launchers and rubber bullets to the DPD because "that transaction was obviously intended to benefit the general public upon which these weapons and ammunition were meant to be employed," thus making Plaintiffs "consumers" under the Texas DTPA. Third Am. Compl. at 22, ¶46. To state an actionable claim under the Texas DTPA, a claimant must classify as a "consumer." *See Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002) ("[t]o maintain a cause under the Texas DTPA, [the plaintiff] must establish that (1) [plaintiff] is a consumer under the DTPA with respect to its claim[.]"); *see also Davis v. Wells Fargo Bank, N.A.*, 976 F. Supp. 2d 870, 886 (S.D. Tex. Sept. 30, 2013) ("[c]onsumer status is a key element of any Texas [DTPA] claim."). To classify as a "consumer" under the Texas DTPA, a plaintiff must (1) "have sought or acquired goods or services by purchase or lease" and (2) "the goods or services purchased or leased must form the basis of the complaint." *Brittan*, 313 F.3d at 907.

In their Response, Plaintiffs "acknowledge that this Court has already decided against them on this claim." Pls.' Resp. at 3, n. 1. Plaintiffs' statement is accurate. In its previous Memorandum Opinion and Order dismissing Plaintiffs' claims, the Court found that "Plaintiffs cannot sue under the DTPA as direct consumers because Plaintiffs never directly sought nor acquired any goods or services." Doc. No. 40 at 33.

9

The Court further determined that Plaintiffs did not qualify as "indirect" consumers under the Texas DTPA because they had no involvement in the DPD's purchase of Defendants' products and because they failed to plausibly allege that the DPD purchased the launchers and rubber bullets for Plaintiffs' benefit rather than for "DPD's own law enforcement purposes." *Id.* at 34. In Plaintiffs' Amended Complaint, they now only claim that they were "third-party beneficiar[ies]" of the DPD's purchase of Defendants' products because the transaction was "obviously intended to benefit the general public[.]" Third Am. Compl. at 22, ¶46.

If a plaintiff did not directly seek or acquire goods or services by purchase or lease, that plaintiff cannot establish its consumer status under the Texas DTPA unless it is a third-party beneficiary of a transaction that is "specifically required by or intended to benefit the [plaintiff] and the good was rendered to benefit the [plaintiff]." *Lukasik v. San Antonio Blue Haven Pools*, 21 S.W.3d 394, 401 (Tex. App.—San Antonio 2000, no pet.) (collecting cases). To establish that it is more than a mere "incidental beneficiary," the plaintiff must show that the transaction was "consummated with an *intent to benefit* the claimant." *Chamrad v. Volvo Cars of N. Am.*, 145 F.3d 671, 672 (5th Cir. 1998) (emphasis added). If the plaintiff cannot prove that it is more than an "incidental beneficiary" of the disputed transaction, the plaintiff cannot establish consumer status. *See Ewbank v. ChoicePoint, Inc.*, 551 F. Supp. 2d 563, 567 (N.D. Tex. 2008) (Kinkeade, J.) (granting summary judgment for defendant because the fact that the plaintiff "may have benefitted, *or been damaged*, by the conduct of [the defendant]

10

in providing [the] services [at issue] does not make [the plaintiff] a consumer under the DTPA." (emphasis added)).

Here, it is abundantly clear that Plaintiffs cannot establish "third-party beneficiary" status. Plaintiffs state that Defendants' sale of their products to the DPD was "obviously" meant to benefit the public. Third Am. Compl. at 22, ¶46. Outside of that singular conclusory assertion, Plaintiffs make no plausible allegations that Defendants actually intended their products to benefit the crowds for which those products may be utilized. *See Chamrad*, 145 F.3d at 672 (transaction must be "consummated with an intent to benefit [the plaintiff]."). The Court finds it *much* more likely that Defendants intended that their "less lethal" products benefit the DPD, a law enforcement agency, for the purpose of controlling unruly crowds, a distinct *law enforcement* action. Third Am. Compl. at 21, ¶43 (emphasis added); *cf. Lara v. Lile*, 828 S.W.2d 536, 542 (Tex. App.—Corpus Christi-Edinburg 1992, writ denied) (employer's acquisition of "safety-conscious" transportation services was not primarily intended to benefit the plaintiff, and the positive safety element of those services was merely "incidental."). In any event, even if Plaintiffs were benefitted (or damaged) by a transaction in which they had no involvement, that fact would only be enough to establish their status as "incidental beneficiar[ies]." *See Ewbank*, 551 F. Supp. 2d at 567.

The Court finds that Plaintiffs fail to plausibly allege their claim for violation of the Texas DTPA. Accordingly, the Court **GRANTS** the Motion as to this claim, and the claim is **DISMISSED WITH PREJUDICE**.

11

**B. Claim for Breach of the Implied Warranty of Merchantability**

Plaintiffs also assert a claim for breach of the implied warranty of merchantability. Third Am. Compl. at 21–22, ¶¶43–45. Plaintiffs allege that Defendants breached the warranty of merchantability because "these [launchers and rubber bullets] lack a safe use for crowd control because they cause, even when used as Defendants direct, severe and catastrophic injuries to the public[.]" *Id.* at 22, ¶44. Plaintiffs further claim that Defendants promoted the launchers and rubber bullets as "less lethal" alternatives to standard law enforcement weaponry. *Id.* at 21, ¶43.

To recover on a claim for breach of the implied warranty of merchantability in Texas, a plaintiff must prove that "(1) the defendant sold or leased a product to the plaintiff; (2) the product was *unmerchantable*; (3) the plaintiff notified the defendant of the breach; and (4) the plaintiff suffered injury." *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 336 (Tex. App.—Tyler 2003, no pet.) (emphasis added). A product is "unmerchantable" if it is "unfit for *ordinary* purposes." *Id.* (emphasis added). To be unfit for "ordinary" purposes, the product must have a defect that causes it to "lack [] something necessary for adequacy." *Id.*; *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989).

Plaintiffs' breach of warranty claim relies solely on the premise that, because Defendants' products have the capability to cause significant injury when used for crowd control purposes, those products are unfit for their ordinary purpose, namely crowd control. *See* Third Am. Compl. at 22, ¶44. Further, Plaintiffs place significant

emphasis on the fact that Defendants' launchers and rubber bullets were advertised as "less lethal" alternatives to standard law enforcement weaponry. *See id.* at 21, ¶43; 19, ¶39; 3, ¶12; *see also* Pls.' Resp. at 9 (Plaintiffs argue that "[t]he intended purpose [of Defendants' products] is not to cause the crowd serious, or even any, injury.").

Plaintiffs' argument is wholly conclusory. Plaintiffs do not dispute that the primary, intended purpose of Defendants' launchers and rubber bullets is crowd control. *See id.* at 21, ¶43. Rather, they allege that these products are unfit for their ordinary purpose because they "lack a safe use for crowd control[.]" *Id.* at 22, ¶44. However, the Court agrees with Defendants' argument that "[t]he possibility of an injury, albeit a 'less lethal' injury, is an inherent risk in using these products." Defs.' Reply at 8. Plaintiffs are not asserting a products liability claim. Rather, they are asserting a *breach of warranty* claim. *See* Third Am. Compl. at 21, ¶43 (emphasis added). "A product can be unreasonably dangerous *while at the same time be fit for its intended purposes*. *Deeds v. Whirlpool Corp.*, Civ. Action No. H-15-2208, 2016 WL 6070552, at *5 (S.D. Tex. Oct. 17, 2016) (emphasis added); *see also Mott v. Red's Safe and Lock Servs., Inc.*, 249 S.W.3d 90, 98 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("whether a product is unfit for its intended purpose is *not* an element of products liability and is a significantly different question than whether a product is unreasonably dangerous." (emphasis added)). The Court makes no determination as to the reasonableness of the alleged dangers associated with Defendants' launchers and rubber bullets. However, even assuming that Plaintiffs' allegations of the products' dangers are accurate, that

alone does not establish that the products breach the implied warranty of merchantability. Again, the Court agrees with Defendants that the possibility of injury is inherent in Defendants' products. *See* Defs.' Reply at 8.

Plaintiffs fail to provide any further factual support for their allegation that Defendants' products are unmerchantable. *See Iqbal*, 556 U.S. at 663 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiffs spend significant time discussing the dangers of Defendants' products and the fact that these products are advertised as "less lethal" alternatives to standard law enforcement weaponry. *See* Third Am. Compl. at 18–21, ¶¶38–42. However, the Court will not spend similar amounts of time on that discussion. In the end, Plaintiffs provide no plausible allegations as to how the potential for injury is inconsistent with the "less lethal" description and makes the launchers and rubber bullets *unfit for their ordinary purpose*.

Because Plaintiffs fail to plausibly allege breach of the implied warranty of merchantability, the Court **GRANTS** the Motion as to this claim, and the claim is likewise **DISMISSED WITH PREJUDICE**.

V.    **Conclusion**

For the foregoing reasons, the Court **GRANTS** Defendants Combined Systems, Inc. and Penn Arms, Inc.'s Motion and **DISMISSES WITH PREJUDICE** each of Plaintiffs' claims against Defendants.

**SO ORDERED.**

Signed January 6th, 2026.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE

15